James LONGINO, M.D., Appellant,

v.

Douglas CROSSWHITE and Kam Cross-
white, on Behalf of Ashton Douglas
CROSSWHITE, a Minor, Appellees.

No. 06–05–00109–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Dec. 19, 2005.

Decided Jan. 27, 2006.

Ken W. Good, Vance L. Metcalf, Kent, Good, Anderson & Bush, PC, Tyler, for appellant.

Randy Taylor, Mark T. Falcon, Law Office of Randy Taylor, Yantis, for appellees.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

James Longino, M.D., appeals from the denial of his motion challenging the expert report in this medical malpractice lawsuit brought by Douglas Crosswhite and Kam Crosswhite, on behalf of Ashton Douglas Crosswhite, their minor son. Because the expert report fails to provide specific information concerning Longino's conduct, the trial court abused its discretion in denying the motion. We reverse and remand for further proceedings consistent with this opinion.

**The Expert Report**

At close to midnight October 19, 2002, the Crosswhites took their three-year-old child, Ashton, to the Hopkins County Memorial Hospital Emergency Department with symptoms of a possible upper respiratory infection, accompanied by nausea, vomiting, and fever. Ricky Cameron, M.D., the emergency room physician, prescribed some medications to alleviate the vomiting, ordered increased fluids, and told the Crosswhites to return the child for a recheck in twenty-four hours if his condition had not improved. Approximately twenty-two hours later, the Crosswhites returned to the emergency room with Ashton, whose condition had deteriorated. Cameron admitted Ashton to the hospital, prescribed additional medication and IV fluids, and consulted by telephone with Longino, a pediatrician who had treated Ashton in the past. The following morning, at around nine o'clock, Longino ordered tests conducted that diagnosed Ashton with bacterial meningitis. Around noon the same day, Ashton was transferred to the Children's Medical Center of Dallas, where he eventually recovered, but with what the Crosswhites' expert describes as "significant and permanent neurological injuries."

The Crosswhites sued Cameron, Longino, and Hopkins County Memorial Hospital for medical malpractice. The Crosswhites alleged that a prudent physician would have performed the tests necessary to diagnose the bacterial meningitis earlier and that the delay was the cause of Ashton's "significant and permanent neurological injuries." After the Crosswhites filed their expert report, Longino filed a motion challenging the adequacy of that report. The trial court denied Longino's motion.

**The Expert Report Is Not a Good–Faith Effort**

Longino contends, in his sole point of error, that the report provided by the Crosswhites fails to describe any specific conduct on his part which could be construed as a deviation from the standard of care. Reviewing the four corners of the expert report, we agree.

Section 74.351 of the Civil Practice and Remedies Code requires a plaintiff asserting a healthcare liability claim to submit an expert report, along with the expert's curriculum vitae, as to each physician or healthcare provider named as a defendant in the suit, no later than the 120th day after filing suit. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.

2005).[1] The Act describes an expert report as a written report providing "a fair summary of the expert's opinions … regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6).

■ If a claimant furnishes a report within the time permitted, a defendant may file a motion challenging the report. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l*). The trial court shall grant the motion only if it appears to the court, after a hearing, that the report does not represent an objective good-faith effort to comply with the statutory definition of an expert report. *See id.; Am. Transitional Care Ctrs. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001).

■ We review a trial court's decision regarding the adequacy of an expert report by an abuse-of-discretion standard. *Hillcrest Baptist Med. Ctr. v. Wade,* 172 S.W.3d 55, 60 (Tex.App.-Waco 2005, pet. filed); *see Group v. Vicento,* 164 S.W.3d 724, 727 (Tex. App.-Houston [14th Dist.] 2005, pet. filed). An abuse of discretion occurs when a trial court acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002). A trial court does not abuse its discretion simply because it may decide a matter within its discretion differently than an appellate court. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985). However, "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion…." *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

■ In determining whether the report represents a good-faith effort, the trial court's inquiry is limited to the four corners of the report. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6); *Palacios,* 46 S.W.3d at 878. A "good-faith" effort requires that the report discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *Palacios,* 46 S.W.3d at 875. "To avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.* at 879. The expert report is not required to prove the defendant's liability, but rather only provide notice of what conduct forms the bases of the plaintiff's complaints.

■ "To constitute a 'good-faith effort,' the report must provide enough informa-

---

**1.** We note that the parties in their briefs cite to the current version of Section 74.351 of the Texas Civil Practice and Remedies Code. Section 74.351 has been amended since the trial court's decision. *Compare* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 864, 875 (amended 2005) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon Supp.2005)) *with* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590 (codified at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon Supp.2005)). Because the amendment is not relevant to this case, we will cite to the current version of the statute.

tion to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit." *Wright,* 79 S.W.3d at 52 (citing *Palacios,* 46 S.W.3d at 879). Omission of any of the statutory elements prevents the report from being a good-faith effort. *Palacios,* 46 S.W.3d at 879. A report that merely states the expert's conclusions about the standard of care, breach, and causation does not meet the statutory requirements. *Id.*

▉ The report here fails to provide a fair summary of how Longino breached the applicable standard of care. That report states in pertinent part as follows:

> In consultation with Dr. James Longino, Dr. Cameron ordered a blood culture, basic blood tests, IV fluids, IV Claforan antibiotics (1st given around 12 midnight), and admitted Ashton to the hospital with a presumptive diagnosis of dehydration and enteritis. During this encounter, a prudent physician would have at least become alarmed by Ashton's symptoms, would have promptly performed a diagnostic lumbar puncture, and would have aggressively initiated treatment with the appropriate combination of antibiotics.
>
> . . . .
>
> Dr. Cameron['s] and Dr. Longino's care of Ashton Crosswhite fell below the standard of care for the emergency diagnosis and treatment of bacterial meningitis in a child. Their failure to either recognize or acknowledge the obvious symptoms of fever, altered mental status, and neck pain; to perform a timely diagnostic lumbar puncture; and to aggressively treat Ashton's bacterial men-

ingitis with an appropriate combination of antibiotics led to an unnecessary exacerbation of his symptoms. Subsequently, this prolonged symptomatology was a cause of Ashton's significant and permanent neurological injuries.

▉ "While a 'fair summary' is something less than a full statement of the applicable standard of care and how it was breached, a fair summary must set out what care was expected, but not given." *Palacios,* 46 S.W.3d at 879. The Texas Supreme Court stated that "whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently." *Id.* at 880. In *Jones v. Ark–La–Tex Visiting Nurses,* this Court held that the trial court did not abuse its discretion in dismissing a case against several nurses because the expert report failed to differentiate between the nurses and the doctors, and complained of an act not within the control of the nurses. 128 S.W.3d 393, 397 (Tex.App.-Texarkana 2004, no pet.). Similarly, in this case, the expert report fails to differentiate between the conduct of Cameron and Longino, and the complained-of conduct occurred while Cameron was the treating physician. The report contains no specific information concerning how Longino breached the standard of care apart from Cameron's conduct. The report, therefore, is not a good-faith effort as to Longino.

▉ In addition, the expert's report must contain information on causation. It is not enough for a report to contain conclusory insights about the plaintiff's claims. *Moore v. Sutherland,* 107 S.W.3d 786, 790 (Tex.App.-Texarkana 2003, pet. denied); *Wright,* 79 S.W.3d at 52. Rather, the expert must explain the bases of the statements and link his or her conclusions to

the facts. *Wright,* 79 S.W.3d at 52. The report here only states that the delay in diagnosis caused significant and permanent neurological injuries. An expert report must show causation beyond mere conjecture. *Id.* The report in this case contains mere conclusions concerning causation.

■■■ *Palacios* makes it clear that a claimant must present specific evidence in a medical report because "knowing what specific conduct the plaintiff's experts have called into · question is critical to both the defendant's ability to prepare for trial and the trial court's ability to evaluate the viability of the plaintiff's claims." *Palacios,* 46 S.W.3d at 876–77. Thus, in the language of *Palacios,* the expert report here fails to "inform the defendant of the specific conduct the plaintiff has called into question." *See id.* at 879. In the absence of specific information concerning Longino's conduct and only conclusory statements concerning causation, the trial court abused its discretion by finding that the expert report constituted a good-faith effort.

For the reasons stated, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.[2]

---

2. Longino contends the claims must be dismissed. Because a report, although deficient, was timely filed, the trial court could grant the Crosswhites an extension of time under Section 74.351. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c); *In re Woman's Hosp. of Tex., Inc.,* 141 S.W.3d 144, 156 (Tex.2004).