Reversed and Remanded and Memorandum Opinion filed October 5, 2006








Reversed and Remanded and Memorandum Opinion filed October 5,
2006.

 

                                                                                                                                                            

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01256-CV

____________

 

FONTENOT ENTERPRISES, INC. D/B/A
HOPE REHABILITATION, Appellant

 

V.

 

MURIEL KRONICK, Appellee

 



 

On Appeal from the 157th
Judicial District Court

Harris County, Texas

Trial Court Cause No.
05-23661

 



 

M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal in a healthBcareBliability case.  A
medical rehabilitation center challenges the trial court=s denial of its
objection to the plaintiff=s expert witness reports and its motion to
dismiss under section 74.351 of the Texas Civil Practices and Remedies Code. 
Because the experts= reports fail to satisfy the statutory
requirement of offering an opinion on causation, we reverse the trial court=s order of
December 9, 2005, and remand for further proceedings consistent with this
opinion.








I. Factual and Procedural
Background

On April 7, 2005, appellee/plaintiff Muriel Kronick filed a
health-care-liability claim against appellant Fontenot Enterprises, Inc. d/b/a
Hope Rehabilitation Center (hereinafter AFontenot@), seeking to
recover for injuries she claims to have sustained during a physical therapy
visit.  Kronick alleged that during her eighth visit to Fontenot, a licensed
therapist attached a portable nine volt battery Transcutaneous Electrical Nerve
Stimulator (ATENS@) to Kronick=s left calf as
part of her physical therapy.  Kronick contends that as a result of this
procedure she suffered a burn to her left calf.  

On August 3, 2005, in an effort to comply with section
74.351(a), Kronick served Fontenot with a report prepared by Cynthia Card, a
licensed physical therapist.  Fontenot filed an objection to the sufficiency of
the expert report and a motion to dismiss under section 74.351(a) and (b).  On
September 30, 2005, the trial court held a hearing on Fontenot=s motion, ruled
that Kronick=s expert report was deficient on the issue of
causation, and entered an order allowing Kronick a thirty-day extension to cure
the deficiencies in the report.  On October 5, 2005, the trial court signed a
written order to this effect.  

Thereafter, on November 3, 2005, Kronick sent Fontenot via
fax a copy of an unsigned letter prepared by Dr. Donald F. Gardner.  Fontenot
filed an objection to the sufficiency of this expert report and moved the court
to dismiss Kronick=s claims against Fontenot with prejudice
under section 74.351.  On December 9, 2005, the trial court held a hearing and
rendered an order denying Fontenot=s motion to
dismiss.

II.  Issue Presented

Fontenot brings this interlocutory appeal raising the
following issue:








Whether the district court abused its discretion in denying the health
care provider=s objections to the sufficiency of
the claimant=s expert reports and motion to
dismiss filed pursuant to Texas Civil Practice and Remedies Code section
74.351(a) and (b), where such reports did not represent an objective good faith
effort to provide a fair summary of a qualified expert=s opinions regarding the causal
relationship between the injury or harm claimed and the alleged departure from
the applicable standard of care.

 

III.  Standard of Review

 

We review a trial
court=s determination
that an expert is qualified under an abuse-of-discretion standard.  Broders
v. Heise, 924 S.W.2d 148, 151B52 (Tex. 1996). 
We apply this same standard when reviewing a trial court=s decision
regarding the adequacy of an expert report.  Am. Transitional Care Cntrs. of
Tex., Inc. v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001).  Kronick, as the
proponent of the experts, has the burden to show that the experts are qualified
and the report satisfies the statutory requirements.  See Olveda v.
Sepulveda, 141 S.W.3d 679, 682 (Tex. App.CSan Antonio 2004,
no pet.). 

The trial court abuses its discretion if it acts
arbitrarily or unreasonably, and without reference to guiding rules or
principles.  See Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999). 
An abuse of discretion does not occur merely because the appellate court may
have decided a discretionary matter in a different way than the trial court.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241B42 (Tex. 1985).

IV. Analysis

To support its contention that the trial court erred in
denying its motion to dismiss Kronick=s claims under
section 74.351, Fontenot essentially contends that Kronick failed to
demonstrate that the expert reports of Cynthia Card and Dr. Donald F. Gardner
were sufficient on the issue of causation. 

Under section 74.351, a claimant, not later than the 120th
day after the date a healthBcareBliability claim is
filed, must serve on each party one or more expert reports addressing liability
and causation. Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(a), (j) (Vernon 2005).  Section
74.351 (i) states in pertinent part: 








Notwithstanding any other provision of this section, a claimant may
satisfy any requirement of this section for serving an expert report by serving
reports of separate experts regarding different physicians or health care
providers or regarding different issues arising from the conduct of a physician
or health care provider, such as issues of liability and causation.  Nothing in
this section shall be construed to mean that a single expert must address all
liability and causation issues with respect to all physicians or health care
providers or with respect to both liability and causation issues for a
physician or health care provider. 

 

Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(i).  In
her attempt to comply with the statutory requirements Kronick filed more than
one report in this case.  The trial court found the first report from Cynthia
Card deficient on the issue of causation, and ordered a thirty-day extension in
which Kronick could attempt to cure the deficiencies.  Kronick, in response,
submitted a one-page unsigned letter from Dr. Gardner.  Thus, the only issue
before us is whether Kronick=s expert reports (separate or together)
establish the causal relationship between any breach of the standard of care
and the injuries that Kronick allegedly sustained.  See Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6)
(emphasis added).[1]  
We examine each proffered report individually. 

A.      Card=s Report

To qualify as an expert witness on the issue of causation,
the physician must be qualified to render opinions on that causal relationship
under the Texas Rules of Evidence.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 74.403(a) (Vernon
2005); Longino v. Crosswhite, 183 S.W.3d 913, 917B18 (Tex. App.CTexarkana 2006, no
pet.).  An acceptable report demonstrates the expert is qualified to do so. 
Id. ' 74.351(r)(5)(B).
Subject to exceptions that do not apply in this case, section 74.403 states as
follows: 








in a suit involving a health care
liability claim against a physician or health care provider, a person may
qualify as an expert witness on the issue of the causal relationship between
the alleged departure from accepted standards of care and the injury, harm, or
damages claimed only if the person is a physician and is
otherwise qualified to render opinions on that causal relationship under
the Texas Rules of Evidence.

Tex. Civ. Prac. & Rem. Code Ann. ' 74.403(a)(Vernon
2005)(emphasis added).  In section 74.401, Aphysician@ is defined as a
person who is: 

(1) licensed to practice medicine
in one or more of the states in the United States; or (2) a graduate of
a medical school accredited by the Liasion Committee on Medical Education or
the American Osteopathic Association only if testifying as a defendant and that
testimony relates to that defendant=s standard of
care, the alleged departure from that standard of care, or the casual
relationship between the alleged departure from that standard of care and the
injury, harm, or damages claimed. 








Id. 
at
' 74.401(g).  Thus,
at a minimum, to render an expert report as to causation, the expert must be
licensed to practice medicine in one or more of the states in the United
States.[2] 
There is no dispute that Card, however qualified she might be as a physical
therapist, is not licensed to practice medicine in any of the states in the
United States.  Therefore, under the plain language of the statute, she is not
qualified to render an expert opinion regarding causation.  See id. at '' 74.401;
74.403(a); see also Methodist Healthcare Sys. of San Antonio, LTD., LLP v.
Martinez-Partido,  No. 04-05-00868-CV, 2006 WL 1627844, at *3 (Tex. App.CSan Antonio June
14, 2006, no pet. h.) (concluding that although the expert previously had been
certified by the American Board of Emergency Medicine, his inactive status
coupled with a lack of specific information in either his report or his
curriculum vitae about his expertise in the specific area of urology in
question, did not establish that his opinion Awould have risen
above mere speculation to offer genuine assistance to the jury [and] did not
establish that his expertise on the issue of cause in fact met the requisites
of Rule 702@) (mem. op.). 

B.      Dr.
Gardner=s Report

In her attempt to cure the deficiencies found by the trial
court in Card=s report, Kronick served by fax an unsigned copy of a
letter prepared by one of her treating physicians, Dr. Donald F. Gardner.  Dr.
Gardner is board certified in Internal Medicine and specializes in the area of
Endocrinology.  On May 14, 2004, Dr. Gardner treated Kronick as a walk-in
patient for a blister located on her left leg.  Kronick=s primary
complaint (as stated in the report) was that she had been burned by an
electrical stimulator on the day before her visit. 

To qualify as an expert witness who may render a report in
a suit against a health care provider, the physician preparing the report must
be qualified on the basis of training or experience to offer an expert opinion
regarding the accepted standard of medical care for the diagnosis, care, or
treatment of the illness, injury, or condition involved in the claim. Tex. Civ. Prac. & Rem.Code Ann. ' 74.402(b) (Vernon
2005).  In accordance with section 74.351, a trial court should grant a motion
challenging the adequacy of an expert report if the report is not an objective
good faith effort to comply with the definition of an expert report provided in
subsection (r)(6).  Tex. Civ. Prac.
& Rem. Code Ann. ' 74.351.  Subsection (r)(6) of section
74.351defines Aexpert report@ as:

a written report by an expert that provides a fair summary
of the expert=s opinions as of the date of the
report regarding applicable standards of care, the manner in which the care
rendered by the physician or health care provider failed to meet the standards,
and the causal relationship between that failure and the injury, harm, or
damages claimed.

 








Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6)
(emphasis added).  Thus, the expert report must address (1) the standard of
care, (2) breach of that standard of care, and (3) causation.  Id.  The
qualifications necessary to fulfill these criteria must be found in the expert
report itself.  Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,
46 S.W.3d 873, 878 (Tex.  2001); Olveda v. Sepulveda, 141 S.W.3d 679,
683 (Tex. App.CSan Antonio 2004, pet. denied).  In determining
whether the report represents a good‑faith effort, the trial court=s inquiry is
limited to the four corners of the report.  Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6); Palacios,
46 S.W.3d at 878.  A Agood‑faith@ effort requires
that the report discuss the standard of care, breach, and causation with
sufficient specificity to inform the defendant of the conduct the plaintiff has
called into question and to provide a basis for the trial court to conclude
that the claims have merit.  Palacios, 46 S.W.3d at 875.  

 ATo avoid dismissal, a plaintiff need not
present evidence in the report as if it were actually litigating the merits.
The report can be informal in that the information in the report does not have
to meet the same requirements as the evidence offered in a summary‑judgment
proceeding or at trial.@  Id. at 879.  Omission of any of
the statutory elements prevents the report from being a good‑faith
effort.  Id.  at 879.  A report that merely states the expert=s conclusions
about the standard of care, breach, and causation does not meet the statutory
requirements.  Id.

Dr. Gardner=s letter is very brief and fails to
provide any significant discussion of the causal relationship between the
alleged injury and any alleged departures from the standard of care.  This
unsigned[3]
report states in its entirety as follows: 








I am responding to your request for more information concerning Mrs.
Muriel Kronick.  Specifically, you requested additional information concerning
my visit with Mrs. Kronick on May 14, 2004 when she presented to my clinic on
an unscheduled basis as a work-in visit because of blister located on her left
leg. Her presenting complaint was that she had been burned by an electrical
stimulator on the day prior to the visit. 

The blister measured approximately
3.5 x 2.5 centimeters and was located on the lateral aspect of her calf on the
left leg. It was filled with clear fluid. I looked at the lesion and referred
her directly and immediately to the emergency room for further evaluation and
treatment. 

I am a physician who has been working as a private practitioner at the
above address for almost twenty years.  I obtained by degree in medicine from
the University of Illinois Medical School in Chicago.  Subsequently I undertook
further training as an intern in the Department of Medicine at Vanderbilt
University Hospital, and I am board certified in internal medicine. Later I
obtained a subspecialty certification in the area of Endocrinology which is the
specialty in internal medicine covering diabetes and hormonal diseases.  I have
been in private practice for approximately 23 years. During that time, I have
seen many patients who are under my primary care with problems with burns and
injuries in my office. I have no specialty training in emergency medicine or
any type of special training in the diagnosis or management of burns or skin
diseases. 

Regarding the large bullous lesion or Ablister@ on the left leg of Mrs. Kronick on the day of her visit:
it was my impression that the bullous lesion was due to a burn. I really had no
other differential diagnostic considerations at that time. You specifically
asked whether this lesion could have been due to an insect bite.  I saw no
other evidence of bites that day, and in my opinion the lesion was more
compatible with a burn than any kind of bite.  I am personally satisfied
with her explanation that the lesion was caused by a burn from an electrical
unit that was applied to that area on the day previously.  I should mention
that I am certainly not an expert in TENS units. 

 








(Emphasis
added).  The expert=s report must contain information on
causation.  It is not enough for a report to contain conclusory insights about
the plaintiff=s claims.  Moore v. Sutherland, 107 S.W.3d 786,
790 (Tex. App.CTexarkana 2003, pet. denied); Wright, 79 S.W.3d
at 52.  Rather, the expert must explain the bases of the statements and link
his conclusions to the facts. Wright, 79 S.W.3d at 52.  In her petition,
Kronick alleged that as a Adirect and proximate cause@ of Fontenot=s negligence, she
suffered severe bodily injuries consisting of a burn to her left calf.   








Dr. Gardner has no special training in the diagnosis or
management of burns and is not an expert in TENS units.  He makes no attempt to
link the Aburn@ or injuries allegedly sustained by
Kronick to any alleged breach of the standard of care by Fontenot.  Dr. Gardner
observed Kronick for only a short period of time during her walk-in patient
visit.  Dr. Gardner does not state in his report  how the TENS unit could have
caused any alleged injury sustained by Kronick.  In fact, he does not even
mention a TENS unit at all, except to emphasize that he is not an expert in
this area.  It appears that he is basing his conclusion that Kronick suffered
the burn from the TENS unit not on any medical diagnosis, but solely on what
Kronick assumed was the Acause@ of the burn. 
Indeed, Dr. Gardner states in his report that he is  Apersonally
satisfied with her explanation that the lesion was caused by a burn from an
electrical unit that was applied to that area on the day previously.@   Dr.
Gardner simply does not state any facts upon which he relies to conclude that
the injuries Kronick sustained were somehow caused by the negligence of
Fontenot or its employees.  The report, in fact, does not contain any
information regarding how the conduct of Fontenot or its employees could have
contributed to any injuries alleged in Kronick=s original
petition.      An expert report must show causation beyond mere conjecture.  Id. 
Reading within the four corners of Dr. Gardner=s report, we
cannot conclude that it contains more than mere conclusory statements
concerning causation. Compare Longino v. Crosswhite ex rel. Crosswhite, 183
S.W.3d 913, 918 (Tex. App.CTexarkana 2006, no pet.) (concluding
deficient a report that was absent of specific conduct concerning the defendant=s conduct and
contained only conclusory statements concerning causation); and Davis v.
Spring Branch Med. Ctr., Inc., 171 S.W.3d 400, 407B10 (Tex. App.CHouston [14th
Dist.] 2005, no pet.) (finding a report deficient because the four corners of
the report lacked information linking the expert=s conclusion to
the defendant=s breach); and Wright, 79 S.W.3d at 53 (finding
inadequate an expert=s statement that Aif the x-rays
would have been correctly read and the appropriate medical personnel acted upon
those findings then Wright would have had the possibility of a better outcome@), with Manor
Care Health Services, Inc. v. Ragan, 187 S.W.3d 556, 564 (Tex. App.CHouston [14th
Dist.] 2006, pet. filed) (concluding that report was adequate because expert=s contention that
the nurses= breach of the standard of care is linked to the
[plaintiff=s] death is adequately explained in the report). We
conclude that Dr. Gardner=s report did not put Fontenot on notice of
the causal relationship, if any, between any negligence caused by Fontenot and
any alleged injuries sustained by Kronick.  Accordingly, the trial court abused
its discretion in denying Fontenot=s motion to
dismiss Kronick=s claims against Fontenot with prejudice
under section 74.351 of the Texas Civil Practice and Remedies Code. We sustain
Fontenot=s issue on appeal.[4]


V. Conclusion

We reverse the trial court=s order and remand
this case to the trial court with instructions to render judgment dismissing
Kronick=s claims against
Fontenot with prejudice and to award Fontenot its reasonable attorney=s fees and costs
of court.[5]

 

 

/s/      Kem Thompson Frost

Justice

 

 

Judgment rendered
and Memorandum Opinion filed October 5, 2006.

Panel consists of
Justices Anderson, Edelman, and Frost.









[1]  In her appellate brief, Kronick requests this court
to read Card=s and Dr. Gardner=s
reports together in order to establish a causal relationship.  It appears that
she relies on both reports for this element even though the trial court
specifically found Card=s report deficient on the issue of causation.
Therefore, we address the issue of whether Card=s report read separately (or with Dr. Gardner=s report) is sufficient on the issue of causation. 





[2]  We note that another statutory provision, states that a Aphysician@ is defined as Aan individual licensed to practice
medicine in this state.@  Tex.  Civ. Prac. & Rem.
Code Ann. ' 74.001(a)(23)(Vernon 2005)
(emphasis added).  However, because there is no showing that Card is
licensed in any of the states of the United States, we need not and do
not address this matter. 





[3]  Although Fontenot mentions that the report is
unsigned, it does not provide any argument supporting dismissal based on this
fact.  Nor did Fontenot raise this issue in its AObjections to the Sufficiency of the Expert Report@ of Dr. Gardner, and AMotion to Dismiss.@  However, we
note that this issue has been addressed by at least one Texas court.  See
Carreras, M.D. v. Marroquin, No. 13-05-082-CV, 2005 WL 2461744, at *1 (Tex.
App.CCorpus Christi, Oct. 6, 2005, pet. filed) (mem. op.). 
In Carreras, the Corpus Christi court found that nothing in section
74.351 required an expert report to bear the expert=s signature. Id.   The court ultimately held
that the trial court did not abuse its discretion by overruling appellant=s objection to the report for lack of signature. Id. 
However, Justice Castillo wrote a dissenting opinion on motion for
consideration en banc, asserting that because the expert report was unsigned,
and therefore unauthenticated, the court should have granted the motion for
rehearing en banc.  See Carreras, M.D, No. 13-05-082-CV, 2006 WL
1284946, at *2B3 (Tex. App.CCorpus
Christi, May 11, 2006, pet. filed) (Castillo, J., dissenting).  Although the
expert report in this case is also unsigned, we need not reach this issue
because Fontenot failed to make any objection at trial on this basis, and does
not raise it in the argument section of its appellate brief.  Therefore, any
complaint that the report was unsigned was not preserved for our review. See
Tex. R. App. P. 33.1(a); Tex. R. App. P. 38.1(h). 





[4]  Because we conclude that the expert reports in this
case do not satisfy the statutory requirement of causation, it is not necessary
for us to determine whether these reports satisfy the statutory requirement of
offering an expert opinion as to the standard of care or whether any standard
of care was breached.  





[5]  Fontenot requested attorney=s fees and costs in both its appellate brief, and its AMotion to Dismiss@ at
trial.