

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00034-CV

_____

STEPHEN P. SOMERVILLE, M.D., Appellant

V.

DOVIE LAWRENCE, Appellee

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 09-0741

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM   OPINION

Dovie Lawrence sued doctors Scott K. Kornman, M.D., and Stephen P. Somerville, M.D., for medical malpractice resulting in alleged unnecessary surgery.[1]   Lawrence developed a sore on her mouth beneath the tongue and sought the advice of her physician.   Suspecting the possibility of a cancerous growth, Mark Littlejohn, M.D., conducted a biopsy.   Lawrence alleged that Kornman examined the biopsied specimen and Somerville "signed the surgical pathology report indicating a diagnosis of 'Grade 3 squamous cell cell [sic] carcinoma.'"   Lawrence then sought "care and treatment from an oncologist, and she underwent further testing, including a PET scan." After this additional treatment and testing, "a large section of [Lawrence's] tongue and the lymph nodes in her neck" were removed.   Post surgery, Somerville amended the biopsy report to state "review of primary cuts does show some squamous atypia but pan cytokeratin does not confirm squamous carcinoma."   Pathologist Barry M. Shmookler, M.D., confirmed the specimens removed from Lawrence during surgery were cancer-free.

Lawrence claimed that Somerville failed to institute the proper procedures to prevent misdiagnosis and improperly diagnosed her as having cancer.   The alleged misdiagnosis resulted in, among other claims, unnecessary surgery, pain when eating, disfigurement, and a permanent speech impediment.

---

[1]Dr. Kornman was later nonsuited.

Shmookler provided an expert report on Lawrence's behalf. Somerville objected to this report and the addendum, claiming that Shmookler was unqualified, that his report failed to address the standard of care applicable to him, did not demonstrate how the standard of care was breached, and did not adequately address causation. A motion to dismiss for lack of a qualifying expert report under Chapter 74 of the Texas Civil Practice and Remedies Code was denied by the trial court. As his sole point of error on appeal, Somerville complains that the trial court erred in denying his motion to dismiss.

## I.      Statement of Jurisdiction

Section 51.014(a)(9) of the Texas Civil Practice and Remedies Code specifically permits the appeal of an interlocutory order from a district court that "denies all or part of the relief sought by a motion" seeking to dismiss a plaintiff's claim for failure to meet the expert report requirements. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Vernon 2008); *Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex. 2008); *Longino v. Crosswhite*, 183 S.W.3d 913, 915 (Tex. App.—Texarkana 2006, no pet.). Thus, we have appellate jurisdiction to consider the trial court's interlocutory order denying Somerville's motion to dismiss. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9); *Lewis*, 253 S.W.3d at 208; *Longino*, 183 S.W.3d at 915.

## II.    Standard of Review

A trial court's decision to deny a motion to dismiss based on Section 74.351 is reviewed for an abuse of discretion.[2]  *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Longino*, 183 S.W.3d at 916.   In order to reverse the trial court's decision on this matter, we must find that the judge acted arbitrarily or unreasonably without reference to guiding rules or principles.   *Longino*, 183 S.W.3d at 916.   In reviewing this matter, we may not substitute our opinion for the trial court's judgment.   *Wright*, 79 S.W.3d at 52.

## III.    Qualifications and Causation

Section 74.351(a) states that a "claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert."   TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp. 2009).   It is undisputed that the expert report was served on the parties within the time period required by statute.   Section 74.351(r)(6) requires the report provide

> a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

---

[2]Some of the cases cited refer to Article 4590i, Section 13.01 of the Texas Revised Civil Statutes, which was later codified at TEX. CIV. PRAC. & REM. CODE § 74.351.

4

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (Vernon Supp. 2009). The Texas Legislature intended for health care liability claims to be scrutinized by an expert before their submission to a fact-finder. *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005).

Before a document can be considered as an expert report, it must be rendered by a person qualified to testify as an expert on a particular matter. *Chisholm v. Maron*, 63 S.W.3d 903, 907 (Tex. App.—Amarillo 2001, no pet.). It is Lawrence's burden to demonstrate Shmookler had the requisite knowledge, skill, and experience that would qualify him as an expert witness in this case. *Broders v. Heise*, 924 S.W.2d 148, 149 & 151 (Tex. 1996).

Section 74.401 of the Texas Civil Practice and Remedies Code lists the requirements of a qualifying expert witness in a suit against a physician. TEX. CIV. PRAC. & REM. CODE ANN. § 74.401 (Vernon 2005). Shmookler will qualify if he is a physician who: (1) is practicing medicine or was practicing medicine when the claim arose; (2) has knowledge of the accepted standards of care; and (3) is qualified on the basis of training or experience to offer an expert opinion regarding accepted standards of medical care. *Id.* In determining whether Shmookler's experience qualifies him to offer an opinion on the standard of care, we look at whether he is board certified or has other substantial training or experience in the area of practice, and whether he is actively practicing medicine in rendering care relevant to Lawrence's claims. *Id.*

We have no doubt that Shmookler's curriculum vitae demonstrates that he is a currently practicing board certified pathologist with extensive training and experience in the field. Indeed,

5

experience in the pathology field is unchallenged. Instead, Somerville argues that while Shmookler's report and curriculum vitae establish his knowledge of surgical pathology, "they do not provide a basis to conclude he is qualified to render an opinion on the necessity of surgery." In other words, the argument is that while Shmookler is qualified to render an opinion on a pathologist's standard of care and breach, he is unqualified to render an opinion that surgery was unnecessary, a requirement in establishing a causal connection.

The qualifications of an expert on the issue of causation are separately set forth in Section 74.403. TEX. CIV. PRAC. & REM. CODE ANN. § 74.403 (Vernon 2005). Shmookler will qualify to render a causation opinion if he is a physician and "is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence." *Id.* Rule 702 of the Texas Rules of Evidence provides that if the scientific knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto." TEX. R. EVID. 702. "[A]n expert's opinion regarding causation that is based completely upon speculation and surmise amounts to no evidence." *LMC Complete Auto.*, *Inc. v. Burke*, 229 S.W.3d 469, 478 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

Somerville cites *Murphy v. Mendoza*, 234 S.W.3d 23 (Tex. App.—El Paso 2007, no pet.). Rick Mendoza filed suit against pathologists Alicia G. Murphy and Mariano Allen alleging they misread pathology specimens of biopsied bladder tissue as cancerous. *Id.* at 25. In that case,

6

there was no dispute that Mendoza had cancer; the issue was the extent of the invasion. *Id.* Mendoza's bladder and prostate were surgically removed. Mendoza provided an expert report from pathologist Jonathan Epstein. *Id.* Murphy challenged Epstein, alleging that as a pathologist, Epstein could not render a surgical opinion. *Id.* at 29. In that case, the expert did not have the original slides to examine, but examined recuts. Based on the recut slides, Epstein opined that Murphy's pathology report was ambiguous when it stated that the cancer invaded "smooth muscle" without differentiating between muscularis propria (which would require surgery) and muscularis mucosae (which did not require surgery). Epstein further stated that "a clinician reading this report would most likely interpret the report to indicate tumor invading the muscularis propria" (surgery necessary) when in fact it did not. *Id.* at 27. There, it appears Epstein's report was attempting to offer an opinion about what a clinician or surgeon would conclude as to the necessity for surgery by reading this ambiguous report. The El Paso court found he did not display the qualification or expertise to render such an opinion of a surgeon.

Both Drs. Shmookler and Somerville are pathologists. Shmookler's expertise as a pathologist has not been challenged. His report explains that a basic principle of medicine is that an "extensive, cancer-type surgical procedure is not indicated for a benign, reactive non-neoplastic lesion." Unlike Murphy, where the issue was the extent of cancer and its evaluation to determine the necessity for surgery, here, it is undisputed that the biopsy reading was wrong—the report stated Lawrence had cancer when she did not. In this instance, where an organ is entirely free of

7

cancerous cells, we believe that a qualified pathologist, such as Shmookler, may render an opinion on this basic principle of medicine that a "cancer-type surgical procedure" performed on Lawrence was unnecessary when no cancer was present. Therefore, it follows that Lawrence would not have undergone this surgery if the correct "benign pathology diagnosis had been rendered."

## IV.    Standard of Care and Breach

A trial court *must* grant a motion to dismiss under Section 74.351 if it appears that the report does not represent a good-faith effort to comply with subsection (r)(6) or is not sufficiently specific enough "to provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). In addition to causation by a qualified expert, a good-faith effort requires that the report discuss the standard of care and breach of that standard with sufficient specificity to inform each defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *Jernigan v. Langley*, 195 S.W.3d 91, 94 (Tex. 2006) ("[E]ven if we assume that the reports address the standard of care with respect to each doctor, . . . neither report addresses how Dr. Jernigan breached the standard or how his unstated breach of duty caused John's death with sufficient specificity for the trial court, and Jernigan, to determine that the allegations against Jernigan had any merit."); *Hernandez v. Ebrom*, No. 13-06-053-CV, 2010 WL 1804971, at *4 (Tex. App.—Corpus Christi May 6, 2010, no pet.) (mem. op.) (report is deficient when "[i]t does not state who performed the surgery . . . the report never mentions either defendant in the body of

8

the report"); *see also Longino*, 183 S.W.3d at 916; *Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 875. The report can be informal and is not required to prove Somerville's liability, but must provide notice of what conduct forms the basis of Lawrence's complaints and provide a basis for the trial court to conclude that the claims have merit. *Longino*, 183 S.W.3d at 917. A report that merely states an expert's conclusions about the standard of care, breach, and causation does not meet the statutory requirements. *Id.*; *Wright*, 79 S.W.3d at 52. Rather, the expert must explain the basis of his or her statements to link the expert's conclusions to the facts. *Wright*, 79 S.W.3d at 52. The report itself must contain the required information within its four corners. *Id.* at 53. The trial court's decision regarding adequacy of an expert report is reviewed under an abuse of discretion standard. *Longino*, 183 S.W.3d at 916.

An expert report must inform each defendant of the specific conduct of each defendant that the plaintiff has called into question. *Palacios*, 46 S.W.3d at 879; *Murphy*, 234 S.W.3d at 29–30 (citing *Garcia v. Marichalar*, 198 S.W.3d 250, 254–55 (Tex. App.—San Antonio 2006, no pet.)) (although expert report focused on single incident, it did not inform defendant of his specific conduct called into question because multiple defendants were sued and report failed to discuss how defendant's care failed to meet standard of care or how defendant's care caused harm). In this case, Shmookler's expert report failed to reference Somerville by name. Instead, it referred to the "examining pathologist." An addendum to the expert report stated:

> In a phone conversation with Dr. Mark Littlejohn on September 10, 2009, he stated
> that he was aware of speculation that the microscopic slides from the tongue biopsy

9

. . . performed on Dovie Lawrence were reviewed by Dr. Scott Kornman. This raises the possibility that the microscopic slides were really reviewed and diagnosed by Dr. Kornman.

Thus, even though the report was signed by Dr. Stephen Somerville, if Dr. Kornman had reviewed and diagnosed these slides, he breached the standard of care. Alternatively, if it was Dr. Somerville who reviewed and diagnosed these slides, then he breached the standard of care. Therefore, in order to determine who breached the standard of care, it is necessary to resolve this issue.

In other words, Shmookler could not determine which doctor breached the standard of care. A report is sufficient only if it provides "specific information about what the defendant should have done differently." *Longino*, 183 S.W.3d at 917. In this case, the report provided no information other than what the examining pathologist should have done differently.[3] The report itself must contain the required information within its four corners. *Wright*, 795 S.W.3d at 53. It did not identify Somerville as the examining pathologist. As in *Jernigan*, Shmookler's report, assuming it correctly identified the standard of care for the examining pathologist, could not be used to determine whether Lawrence's claims against Somerville had any merit. For this reason, we sustain Somerville's point of error on standard of care and breach.[4]

---

[3]Lawrence's own petition, as well as her biopsy report, identified Kornman as the pathologist who "examined the biopsied specimen in gross." If this is the case, Lawrence's response to the motion to dismiss states "ultimately it may have been Kornman who was responsible for the misdiagnosis of cancer at issue in this case. . . . At this juncture, it is literally impossible to determine which of the two defendants is the culprit."

[4]We note that the record of the hearing contains counsel's statements suggesting that Somerville conducted the microscopic examination of the biopsy specimen. The report contained information identifying the standard of care and breach for the examining pathologist. However, because the four corners of the expert report did not identify Somerville as conducting the microscopic examination, we may not rely on counsel's statements in determining the sufficiency of the report. *Palacios*, 46 S.W.3d at 878.

10

Somerville contends that Lawrence's claims must be dismissed. Section 74.351(c) states, "[i]f an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) (Vernon Supp. 2009). Because a report, although deficient, was timely filed, the trial court can grant an extension of time under Section 74.351(c). *See Longino*, 183 S.W.3d at 918 n.2 (citing *In re Woman's Hosp. of Tex., Inc.*, 141 S.W.3d 144, 156 (Tex. 2004)).

## V. Conclusion

We reverse the judgment and remand this case to the trial court to determine whether to grant a thirty-day extension so that Lawrence might attempt to cure the deficiencies in the report. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c); *Leland v. Brandal*, 257 S.W.3d 204, 205 (Tex. 2008).

Jack Carter
Justice

Date Submitted:    July 19, 2010
Date Decided:      August 12, 2010

11