

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00103-CV

HIGHLAND PINES NURSING AND REHABILITATION,
AND TABITHA AYERS, Appellants

V.

SHAKEITHA WILEY, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF CASANDRA WILEY, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 14-0691

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

O P I N I O N

In this medical negligence case, Highland Pines Nursing and Rehabilitation (Highland Pines) and Tabitha Ayers appeal the trial court's order denying their motion to dismiss the claims of Shakeitha Wiley (Wiley), individually and as the representative of the estate of Casandra Wiley, for failure to file an expert report compliant with Section 74.351(r)(6) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West Supp. 2015). Because the trial court erred in failing to grant Highland Pines' motion to dismiss Wiley's wrongful death claim against Highland Pines and further erred in failing to dismiss her claims in their entirety against Ayers, we reverse the judgment of the trial court. We remand for (1) a determination of reasonable attorney fees and costs owed to Ayers and (2) further proceedings consistent with this opinion.

## I. Factual and Procedural Background

In May 2010, Casandra Wiley (Casandra), Shakeitha Wiley's fifty-one-year-old mother, was admitted to Highland Pines, a nursing-home facility where Ayers was employed as a nurse, after Casandra could no longer care for herself due to various health problems.[1] While a Highland Pines' resident, Casandra developed severe pressure ulcers on her coccyx, which ultimately became infected, allegedly as a result of inadequate and substandard monitoring and care. After the pressure ulcers became infected, Casandra was scheduled to be admitted to Good Shepherd Medical Center at 8:00 a.m. on September 21, 2012, for treatment of the ulcers and the resulting

---

[1]Casandra was admitted to Highland Pines with a diagnosis of cardiovascular accident, coma, hypertension, esophageal reflux, aphasia, diabetes mellitus, convulsions, pulmonary actinomycosis, acute lung edema, and acute respiratory failure.

infection. Because she began to experience respiratory distress in the early morning hours of September 21, Casandra was transported to the hospital by ambulance at 4:00 a.m. Wiley thereafter succumbed to her respiratory distress.

Wiley brought a wrongful death and survival suit against Highland Pines and Ayers, asserting claims of negligence and gross negligence and violations of the Texas Deceptive Trade Practices, Consumer Protection Act. *See* TEX. BUS. & COM. CODE ANN. § 17.41 (West 2011).[2] In support of her medical negligence claim, Wiley filed the expert report and curriculum vitae of Kimberly Willbanks, R.N. Willbanks opined on the standard of nursing care for the treatment of pressure ulcers and concluded that Wiley did not receive proper nursing care, which resulted in her infection. According to Willbanks, multiple failures to meet the standard of care "directly led to Ms. Wiley's decline which ultimately caused her death."

---

[2]As a part of her survival claim, Wiley sought to recover damages for:

a. Physical pain suffered from the negligence of Highland Pines, its agents, employees and Tabitha Ayers to the date of Casandra Wiley's death;
b. Mental anguish suffered from the negligence of Highland Pines, its agents, employees and Tabitha Ayers to the date of Casandra Wiley's death;
c. Reasonable and necessary medical and healthcare expenses to treat the conditions created by Defendants' negligence; and
d. Reasonable expenses for the funeral and burial of Casandra Wiley.

As a part of her wrongful death claim, Wiley sought to recover damages for:

a. Loss of companionship and society sustained in the past;
b. Loss of companionship and society that, in reasonable probability, Shakeitha Wiley will sustain in the future;
c. Mental anguish sustained in the past; and
d. Mental anguish that, in reasonable probability, Shakeitha Wiley will sustain in the future.

Highland Pines and Ayers objected to Willbanks' report and filed a motion to dismiss pursuant to Section 74.351 of the Texas Civil Practice & Remedies Code,[3] claiming (1) that the report failed to specifically implicate Ayers as one of the many nurses who cared for Casandra and (2) that Willbanks was not qualified to opine on the issue of causation. The trial court overruled the motion to dismiss and granted Wiley a thirty-day extension to cure any deficiencies in the report. Consequently, within that timeframe, Wiley filed a second expert report, authored by Lige B. Rushing, Jr., M.D. In that report, Rushing opined on the applicable standard of nursing care and concluded that such standard was breached in this case. Rushing, however, made no attempt to link the development and subsequent infection of Casandra's pressure ulcers to her death.[4]

Highland Pines and Ayers thereafter filed a second motion to dismiss Wiley's lawsuit, alleging that (1) Rushing's report did not specifically mention or implicate Ayers, and (2) failed to state how the acts or omissions of Highland Pines and Ayers' proximately caused Casandra's death. The motion recognized that Wiley filed both a survival claim and a wrongful death claim, but only requested dismissal of the wrongful death claim: "Because Plaintiff is seeking damages for wrongful death, Dr. Rushing's report must state how the alleged breaches of care caused Ms. Wiley's death, or *this claim* must be dismissed." (Emphasis added). The motion further acknowledges that, "[w]hile Dr. Rushing mentions an injury (pressure ulcers) . . . allegedly caused by a defendant's action, he does not mention any cause for Ms. Wiley's death." Highland Pines

---

[3]*See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West Supp. 2015).

[4]Rushing's report indicates that he only reviewed the records of Highland Pines. There is no indication that he reviewed the records of Casandra's hospitalization.

and Wiley asked the trial court to (1) dismiss the entire lawsuit against Ayers with prejudice, (2) dismiss the wrongful death action against Highland Pines, and (3) award Ayers' reasonable attorney fees and court costs. Without stating a basis for its ruling, the trial court denied, in separate orders, the motion to dismiss.

Highland Pines and Ayers appealed these interlocutory orders denying the motion to dismiss as permitted by Section 51.014(a)(9) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2015) (appeal of interlocutory order from district court that "denies all or part of the relief sought by a motion" seeking to dismiss plaintiff's claim for failure to meet expert report requirements); *Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex. 2008).

## II.     Analysis

As a medical negligence case, this matter is governed by Chapter 74 of the Texas Civil Practice and Remedies Code. Section 74.351(a) provides that the plaintiff "not later than the 120th day after the date each defendant's original answer is filed, serve on [each] party or the party's attorney one or more expert reports." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). The report must provide

> a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). If the claimant's report is timely filed, but allegedly deficient, the trial court may grant a single, thirty-day extension to cure that deficiency.

5

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). After having granted a thirty-day extension due to deficiencies in Willbanks' report, the trial court declined to find Rushing's report deficient.

A trial court's decision regarding the adequacy of an expert report is reviewed for an abuse of discretion. *Longino v. Crosswhite*, 183 S.W.3d 913, 916 (Tex. App.—Texarkana 2006, no pet.). In order to reverse the trial court, we must find the court acted arbitrarily or unreasonably without reference to guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). We may not, however, substitute our opinion for that of the trial court. *Id.* Nevertheless, "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion" *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

A trial court must grant a motion to dismiss under Section 74.351 if it appears that the report does not represent a good-faith effort to comply with subsection (r)(6) or is not sufficiently specific "to provide a basis for the trial court to conclude that the claims have merit." *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). A good-faith effort further requires that the report discuss the standard of care and breach of that standard with sufficient specificity to inform each defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude the claims have merit. *Jernigan v. Langley*, 195 S.W.3d 91, 94 (Tex. 2006) (per curiam). Here, the report must provide notice of what conduct forms the basis of Wiley's complaints and provide a basis for the trial court to conclude that Wiley's complaints have merit. *See Longino*, 183 S.W.3d at 917. "A report that merely states an expert's conclusions about the standard of care, breach, and causation does not meet the statutory requirements." *Id.*; *Wright*, 79

6

S.W.3d at 52. Rather, the expert must explain the basis of his statements to link the expert's conclusions to the facts. *Wright*, 79 S.W.3d at 52. Moreover, the issue of "[w]hether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently." *Palacios*, 46 S.W.3d at 879.

A.  **Neither Report is Adequate to Support the Survival and Wrongful Death Claims Asserted against Ayers**

Ayers contends that Willbanks' report does not represent a good-faith effort as to her because it does not provide a fair summary of how Ayers' specific conduct deviated from any applicable standard of care. The report mentions Ayers as a part of the factual review of Highland Pines' records.[5] It contains no criticism specific to Ayers and further provides a factual rendition of the actions of six other nurses.

---

[5]The following comments comprise the totality of all specific references to Ayers:

> Highland Pines records reflect "open area to coccyx, 1.2cm x 0.6cm; 5 small/superficial open areas; Posterior and inner thigh" (Interdisciplinary Note dated 5.31.12). (Exhibit "B") The employee noting this information was T. Ayers, LVN.
>
> On 5/31/12, MD orders reflect "Open areas coccyx and Rt. Posterior and inner thigh, apply Lantiseptic Q shift and PRN." (Exhibit "C") T. Ayers, LVN acknowledged this doctor's order.
>
> . . . .
>
> A Skin Assessment performed by T. Ayers, LVN dated 7/26/12 notes "3 small open areas noted coccyx, current tx calcium alginate and dry dsg daily and PRN" (Exhibit F[)]. However, an MD order dated 7/25/12 notes "1. Cleanse open areas on buttocks with w/c, apply calcium alginate and apply dry dressing q day and PRN. 2. D/C lantiseptic to coccyx." (Exhibit G[).]
>
> . . . .
>
> Interdisciplinary Note dated 8/21/12 – "Call placed to Dr. Shen office and spoke with Sonya RE: wounds to coccyx. Sonya made aware wounds cont. with no improvement. No new orders noted." [S]igned by T. Ayers, LVN (Exhibit M). Interdisciplinary Note dated 9/5/12 – "Call placed to Dr. Shen office and spoke with Sonya RE: Wounds to coccyx cont. with no new orders noted, states she will update MD." signed by T. Ayers, LVN (Exhibit M). . . . Interdisciplinary Note dated 9/10/12 – "Call placed to Dr. Shen and spoke with Sonya RE: wounds to coccyx cont with no

7

Later in the report, Willbanks states that, in her professional opinion, "Ms. Wiley did not receive proper nursing care." These comments are directed at the "nurses" generally, as opposed to Ayers, specifically. In addition to the statements that apply to all of the nurses who cared for Casandra, Willbanks does render a specific criticism of an individual she identifies as the "Treatment Nurse documented in the Skin Committee Notes." The report includes two notations of "Skin Committee Notes," both of which were signed by W. Davis, LVN, not Ayers. The report contains no specific information regarding Ayers' conduct, separate and apart from the other nurses, and no discussion of how Ayers' conduct supposedly fell below accepted standards of nursing care. Because Ayers is a named defendant, a report implicating her specific conduct was required.[6] We find that Willbanks' report did not represent a good-faith effort to comply with Section 74.351(r)(6). *See Palacios*, 46 S.W.3d at 875, 879; *Longino*, 183 S.W.3d at 917.

---

improvement. Orders requested for possible F/U at GSMC WCC and Foley catheter. States she will contact MD, awaiting return call." signed by T. Ayers, LVN (Exhibit M). Interdisciplinary Note dated 9/19/12 – "Called and spoke with Sonya at Dr. Shen's office RE: Admit to Select Specialty hospital for wound evaluation." signed by T. Ayers, LVN (Exhibit M).

. . . .

. . . . There is an interdisciplinary Note dated 9/26/12 at 12pm for late entry for 9/19/12 – "Call received from Dr. Shen and he stated, 'do not admit Ms. Wiley to Select," he then went on to say that resident had 'no rehab potential' and that we have not been aggressive with her treatments. He stated to keep apt at GSMC WCC on 9/24/12 and then we would go from there." signed by T. Ayers, LVN (Exhibit O).

[6]The report includes a general comment on causation: "[T]he multiple failure[s] to meet the standard of care directly led to Ms. Wiley's decline which ultimately caused her death." Even assuming this general comment could be construed as a sufficient opinion on causation to satisfy Section 74.351(r)(6), it cannot be considered because, under the statute, a nurse is not qualified to opine on causation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C) (defining causation expert as "physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence").

Ayers next contends that, because Rushing's report does not mention Ayers or any negligent acts she allegedly committed, that report, likewise, does not constitute a good-faith effort to comply with subsection (r)(6) of Section 74.351. We agree. There is nothing in the report or the record to indicate what Ayers allegedly did or failed to do that caused injury or damage to Wiley. A "passing mention" of a defendant and a failure to state how that defendant breached the standard of care or how the alleged breach caused injury is insufficient to constitute a report compliant with the statute. *Jernigan*, 195 S.W.3d at 93–94. In the complete absence of any mention of alleged negligent acts or omissions by Ayers, the report fails to provide notice to Ayers of the alleged conduct forming the basis of Wiley's complaints against her.[7] Stated differently, Rushing's report failed to provide a basis on which the trial court could conclude that Wiley's claims against Ayers had merit, *see Longino*, 183 S.W.3d at 917, and the trial court was obliged to dismiss all claims against Ayers with prejudice, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b), (l).

B. **Neither Report is Adequate to Support the Wrongful Death Claim Against Highland Pines**

Although Willbanks' report includes opinions on the standard of nursing care and breach of that standard, we need not evaluate whether these opinions are sufficient to comply with the statute because, as we have previously determined, Willbanks was not qualified to opine on the issue of causation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C) (defining causation

---

[7]Rushing's report does not indicate that he was asked to evaluate Ayers' conduct. At the outset of his report, Rushing stated that he had "been asked to determine whether or not the care and treatment provided by Highland Pines Nursing and Rehabilitation facility . . . to Cassandra Wiley met the applicable standards of care and if the care did fall below such standards, whether any injuries resulted from the breach of the standards."

9

expert as "physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence"), § 74.403(a) (West 2011) (person may qualify as expert on issue of causation in medical negligence lawsuit "only if the person is a physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence"); *Benish*, 281 S.W.3d at 205. Consequently, because Willbanks' report fails to meet the causation prong of the statute, it is also inadequate to support the wrongful death claim asserted against Highland Pines.

With respect to Rushing's report, Highland Pines does not assert that this report is deficient with regard to setting forth the applicable standard of care or the manner in which Highland Pines failed to meet that standard. Rather, Highland Pines contends that Rushing's report is deficient because it fails to set forth the causal relationship between its alleged failures to comply with the standard of care and Casandra's death. The report is wholly devoid of any opinions regarding the cause of Casandra's death.[8] It does not even state when Casandra died. Certainly, Rushing did not attribute Casandra's death to the actions of Ayers or Highland Pines in the report. Indeed, the face of the report indicates that Rushing did not even review Casandra's medical records from Good Shepherd Medical Center, where Casandra died. Consequently, Rushing had no basis on which to form an opinion on the cause of Casandra's death.[9]

---

[8]As previously noted, Rushing's report does include opinions on the standard of care, breach of that standard, and causation with respect to the development of Casandra's pressure ulcers. We need not analyze the adequacy of those opinions, as they were not challenged in the trial court and are not challenged on appeal.

[9]In his sole opinion on causation, Rushing stated,

> The conduct of the defendant that is called into question is outlined in the four items above. It is my opinion that the failures outlined here proximately caused Mrs. Wiley's pressure ulcers. The

10

This Court cannot infer that Casandra's pressure ulcers ultimately caused her death. We are limited to the four corners of the expert report in determining whether the report complies with the statute. The expert report must "tie the alleged departure from the standard of care to the specific facts of the case." *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 860 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We, therefore, conclude that Rushing's report is statutorily inadequate to support Wiley's wrongful death claim against Highland Pines. *See Wright*, 79 S.W.3d at 53. The trial court was obliged to dismiss the wrongful death claim against Highland Pines with prejudice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b), (l).

### C.  Ayers is Entitled to Recover Reasonable Attorney Fees and Costs

Section 74.351(b) provides, *inter alia*, for the mandatory imposition of attorney fees and costs when an expert report is not timely filed in accordance with the statutory 120-day time frame. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (b). This fees-and-costs provision also comes into play when a timely, but deficient, report is filed. *Lewis v. Funderburk*, 253 S.W.3d 204, 207–08 (Tex. 2008) (noting that statute defines timely but deficient report as one that "'has not been served'"); *Hightower v. Baylor Univ. Med. Ctr.*, 348 S.W.3d 512, 521–22 (Tex. App.—Dallas 2011, pet. denied).

Because neither report met the good-faith effort requirement as to Ayers on either alleged cause of action, Ayers contends that she was entitled to an award of reasonable attorney fees and

---

development of her pressure ulcers necessitated her admission to the hospital for treatment. Had it not been for the development of the pressure ulcers she would not have required hospitalization when she did.

court costs. We agree. The trial court has discretion to determine the amount of the award. *Id.* at 522–23.

## IV. Conclusion

Accordingly, we make the following dispositions in this case:

(1)     We reverse the trial court's order denying Ayers' motion to dismiss and render judgment that Wiley take nothing on her claims against Ayers.

(2)     We remand the case against Ayers to the trial court for a determination of attorney fees and costs owed to her under Chapter 74 and direct the trial court to enter judgment for attorney fees and costs in favor of Ayers and against Wiley in the amount found by the trial court on remand.

(3)     We reverse that portion of the trial court's order denying Highland Pines' motion to dismiss the wrongful death claim and render a judgment that Wiley take nothing on her wrongful death claim against Highland Pines.

(4)     We remand all remaining claims and issues to the trial court for further proceedings consistent with this opinion.[10]

Ralph K. Burgess
Justice

Date Submitted:     March 31, 2016
Date Decided:     June 17, 2016

_____

[10]Because Highland Pines only sought dismissal of the wrongful death claim, Wiley's survival cause of action may proceed against Highland Pines in the trial court upon remand.

12