Stanley W. WHISENANT,
M.D., Appellant,

v.

Terry ARNETT, Appellee.

No. 05–10–00625–CV.

Court of Appeals of Texas,
Dallas.

May 5, 2011.

922

Michael A. Yanof, Stinnett, Thiebaud & Remington, L.L.P., Dallas, TX, for Appellant.

Houston M. Smith, Law Offices of Houston M. Smith, P.C., Terrell, TX, Rosalyn Renee Tippett, Tippett Law Office, Coppell, TX, for Appellee.

Before Justices MOSELEY, RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

This is an interlocutory appeal by appellant Stanley W. Whisenant, M.D. He appeals from an order denying his motion to dismiss health care liability claims brought against him by appellee Terry Arnett. In two issues Whisenant argues that the trial court should have sustained his objections to the amended report prepared by Arnett's expert pursuant to chapter 74 of the Civil Practice and Remedies Code and granted his motion to dismiss Arnett's claims because Arnett's expert is not qualified to opine on causation and his causation

opinion is deficient. We resolve Arnett's issues against him and affirm the trial court's order.

### BACKGROUND

Whisenant, an anesthesiologist, performed a lumbar discography[1] on Arnett. According to Arnett, he developed pain and an infection after that procedure because a five-centimeter piece of needle broke off during the procedure and was left inside him until it was discovered by another doctor and removed approximately one month later.

Arnett sued Whisenant[2] and timely served an expert report prepared by Aaron Calodney, M.D., an anesthesiologist. In response, Whisenant objected to Calodney's report and moved to dismiss Arnett's claims on the grounds that Calodney was not qualified to opine on the standard of care or causation and his report was deficient with respect to the standard of care, breach, and causation. After a hearing, the trial court granted Arnett a 30–day extension under section 74.351(c) to cure deficiencies in the report and denied Whisenant's motion to dismiss. After Arnett timely served an amended report prepared by Calodney, Whisenant objected to Calodney's amended report and moved to dismiss Arnett's claims on two grounds: (1) Calodney is not qualified to opine on causation, and (2) his causation opinion is "speculative, conclusory, and fail[s] to link the alleged misconduct of Dr. Whisenant to the alleged damages suffered by Mr. Arnett." After a hearing, the trial court issued an order denying Whisenant's mo-

1. According to Whisenant, a lumbar discography "attempts to determine the source of a patient's pain and back problems" and "involves inserting a number of very small needles into the back at different levels and injecting dye and antibiotics."

2. Arnett also sued Summit Specialists of Pain, LLC—the clinic where Whisenant performed Arnett's lumbar discography—but he later nonsuited those claims, leaving Whisenant as the only defendant.

tion to dismiss. Whisenant timely appealed from that order.

## CHAPTER 74

Chapter 74 of the civil practice and remedies code requires a claimant pursuing a health care liability claim to serve one or more expert reports on each party no later than 120 days after the original petition is filed. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (West 2011). An "expert report" is defined as

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6). A court shall grant a motion challenging the adequacy of an expert report only if the report "does not represent an objective good faith effort to comply" with the definition of "expert report" in the statute. *Id.* § 74.351(*l*).

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to dismiss for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877–78 (Tex.2001). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). A trial court does not abuse its discretion simply because it may decide a matter within its discretion differently than an appellate court. *Id.* at 242. However, a trial court has no discretion in determining what the law is or applying the law to the facts. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). A clear failure by the trial court to analyze

or apply the law correctly will constitute an abuse of discretion. *Id.*

## CALODNEY'S CAUSATION OPINION

■ In his first issue Whisenant argues that Calodney's amended report is deficient because it is conclusory and "fails to adequately set forth the causal link between the alleged breaches and damages alleged."

### Causation Opinion Requirements Under Chapter 74

■ An expert report under chapter 74 must provide enough information to fulfill two purposes: it must inform the defendant of the specific conduct the plaintiff has called into question, and provide a basis for the trial judge to conclude that the claims have merit. *Bakhtari v. Estate of Dumas,* 317 S.W.3d 486, 496 (Tex.App.-Dallas 2010, no pet.). To satisfy the required element of causation under chapter 74, an expert report must include a fair summary of the expert's opinion regarding the causal relationship between the breach of the standard of care and the injury, harm, or damages claimed. *Id.* But an expert report does not need to marshal all of the plaintiff's proof; it may be informal and the information presented need not meet the same requirements as evidence offered in summary judgment proceedings or in a trial. *Id.* We determine whether a causation opinion is sufficient by considering it in the context of the entire report. *Id.*

### Analysis

In his amended report, Calodney opines on all three required elements under chapter 74: standard of care, breach, and causation. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6). Calodney explains that the applicable standard of care requires a doctor to carefully remove needles after a

lumbar discography and determine that they are intact. Calodney also states that if a doctor discovers that a needle is broken inside a patient, the doctor should take all necessary measures to ensure that all sections of the broken needle are removed from the patient before the patient is released, and note the event in the patient's record. Next, Calodney explains that Whisenant breached the applicable standard of care by (1) failing to recognize that a five-centimeter piece of needle was broken off and left inside Arnett during his discography, (2) failing to locate the broken section of needle and ensure that it was removed before Arnett was released, and (3) failing to note the event in Arnett's records. And finally, with respect to causation, Calodney's amended report states that Whisenant's negligence caused Arnett to experience pain and a wound infection. More specifically, the amended report contains the following statements concerning causation:

Such an infection would not have occurred if Dr. Whisenant had immediately removed the portion of the needle left in the patient and proper after care was provided to Mr. Arnett. The infection would not have occurred if the needle had not been allowed to remain in Mr. Arnett from June 15, 2007 until July 16, 2007.

. . .

The introduction of a foreign metallic body such as the 5 cm needle left by Dr. Whisenant in Terry Arnett can result in pain and a wound infection.

. . .

A patient who has a 5 cm piece of 25 gauge needle is at risk of experiencing an infection in the operative wound site if the metal is allowed to remain within the patient and not removed. Such an infection was experienced by Mr. Arnett and this infection was directly as a result of the needle being allowed to re-

main within the patient the four weeks prior to its removal.

. . .

It is my opinion, based on a reasonable degree of medical probability, the proximate cause of the pain and wound infection experienced by Terry Arnett was directly as a result of the 5 cm portion of the 25 gauge needle that was broken in Mr. Arnett during the lumbar discography. Furthermore, the removal of the needle four weeks after the lumbar discography was the direct result of the needle not being immediately removed from the patient prior to his release.

. . .

[Whisenant's] negligence as outlined above was in all reasonably [sic] medical probability the proximate cause of the pain and infection experienced by Mr. Arnett because of the 5 cm piece of needle which was allowed to remain within him for four weeks after the lumbar discography which was performed on June 15, 2007.

Whisenant argues that Calodney's amended report does not sufficiently link the alleged breach to the alleged injury. To support his argument that Calodney's causation opinion is deficient Whisenant relies on several cases. None of the cases Whisenant cites leads to the conclusion that Calodney's causation opinion is not adequate.

Three of the cases Whisenant emphasized and relies on are *Nexion Health at Southwood, Inc. v. Judalet*, No. 12–08–00464–CV, 2009 WL 3019717 (Tex.App.-Tyler Sept. 23, 2009, no pet.) (mem.op.); *Longino v. Crosswhite*, 183 S.W.3d 913 (Tex.App.-Texarkana 2006, no pet.); and *Estorque v. Schafer*, 302 S.W.3d 19 (Tex. App.-Fort Worth 2009, no pet.). In *Nexion Health*, a nursing home patient died two months after she fell and broke her leg, and her death certificate listed her

immediate cause of death as congestive heart failure. The plaintiff alleged that the defendant nursing home breached the applicable standard of care by allowing the patient to fall and break her leg, and the plaintiff's expert opined that the patient's fall caused her death. In that case the court concluded that the plaintiff's expert did not sufficiently link the alleged breach to the patient's death because his report "failed to explain how a fractured leg caused her to experience congestive heart failure." 2009 WL 3019717, at *4. In this case Calodney's amended report ties the alleged breach to the alleged injury.

In *Longino*, the defendant physician had treated the patient in the past but did not treat him in the emergency room where his injuries allegedly arose. In that case the court concluded that the plaintiffs' expert report was inadequate because it did not describe how the non-treating physician breached the applicable standard of care. 183 S.W.3d at 917.[3] In this case Whisenant was Arnett's treating physician and the report referred to Whisenant's conduct.

In *Estorque*, the plaintiffs' expert opined in his report that the defendant physicians' failure to consult with a urologist or gynecologist caused delayed diagnosis and treatment of the patient's conditions. In that case the court concluded that the causation opinion was inadequate because it did not state that the patient's injuries would not have occurred if the defendants had consulted with a urologist or gynecologist sooner. 302 S.W.3d at 30. In this case Calodney's amended report states that Arnett's infection would not have occurred if the entire needle had been immediately removed.

In his amended report, Calodney essentially opines that Whisenant breached the standard of care by leaving part of a needle inside Arnett. He also directly links the alleged breach to the alleged injury by explaining that the alleged breach caused Arnett to experience pain and a wound infection. Because Calodney's amended report provides a fair summary of his opinion regarding the causal relationship between the breach of the standard of care and the alleged injury, the trial court could have reasonably concluded that Calodney's amended report adequately described the causation element required under chapter 74. *See, e.g., Concentra Health Servs., Inc. v. Everly,* No. 02–08–00455–CV, 2010 WL 1267775, at *10 (Tex.App.-Fort Worth Apr. 1, 2010, no pet.) (mem.op.) (expert's causation opinion was sufficient because it "set forth his opinion that [defendants'] breaches in the standard of care by delaying treatment of [plaintiff's] RSD for at least six months caused [plaintiff's] permanent foot drop."); *Health Care Unlimited, Inc. v. Villarreal,* No. 13–09–00456–CV, 2010 WL 468061, at *7 (Tex.App.-Corpus Christi Feb. 11, 2010, no pet.) (mem.op.) (expert's causation opinion was sufficient because it explained that sponge negligently left in patient "caused a severe infection that spread all the way to his bones and spine necessitating multiple painful surgeries"). As a result, we cannot conclude that the trial court abused its discretion when it denied Whisenant's motion to dismiss.

■ Citing *Nexion Health,* Whisenant also argues on appeal that Calodney's causation opinion is deficient because it does not "rule out other potential causes of the wound infection and pain, which Chapter

---

3. The *Longino* court also noted that the expert report contained "only conclusory statements concerning causation." 183 S.W.3d at 918. But the defendant did not challenge the expert's causation opinion. *See id.* at 915

("[Defendant] contends, in his sole point of error, that the report provided by [plaintiffs] fails to describe any specific conduct on his part which could be construed as a deviation from the standard of care.").

74 requires." We conclude that Whisenant waived this argument because it was raised for the first time on appeal. *See Williams v. Mora,* 264 S.W.3d 888, 890–91 (Tex.App.-Waco 2008, no pet.) (defendant's only timely objection to expert report was that two statements were speculative and all other objections were waived, including objection raised for the first time on appeal); *see also Plemons v. Harris,* No. 02–08–00326–CV, 2009 WL 51290, at *1–3 (Tex.App.-Fort Worth Jan. 8, 2009, no pet.) (mem.op.) (complaint about causation opinion in expert report not preserved for appellate review because complaint on appeal did not comport with complaint to trial court). Nevertheless, even if Whisenant had preserved this argument for appellate review, we would reject it. *See Baylor Med. Ctr. at Waxahachie v. Wallace,* 278 S.W.3d 552, 562 (Tex.App.-Dallas 2009, no pet.) ("Nothing in section 74.351 suggests the preliminary report is required to rule out every possible cause of the injury, harm, or damages claimed, especially given that section 74.351(s) limits discovery before a medical expert's report is filed."); *see also Walters v. Hudoba,* No. 02–08–00196–CV, 2009 WL 161079, at *7 (Tex. App.-Fort Worth Jan. 22, 2009, no pet.) (mem.op.).

We resolve Whisenant's first issue against him.

### CALODNEY'S QUALIFICATIONS TO OPINE ON CAUSATION

■ In his second issue Whisenant argues that Calodney's amended report is deficient because it "inadequately set[s] forth his qualifications to render causation opinions."

### Expert Qualification Requirements

Under section 74.351(r)(5)(C), in order to qualify as an expert witness on the issue of cause of injury, harm, or damages in a health care liability claim, an expert must be "a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(5)(C). Likewise, under section 74.403(a), "a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed only if the person is a physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence." *Id.* § 74.403(a). Texas Rule of Evidence 702 requires an expert witness to be qualified on the basis of "knowledge, skill, experience, training, or education." TEX.R. EVID. 702.

### Analysis

Calodney's qualifications to provide an expert opinion in this case are summarized in his amended report as follows:

> I am a physician licensed by the Texas Medical Board. I am licensed to practice medicine in the State of Texas and I am a physician practicing in the area of Anesthesiology. I have practiced in the area of Anesthesiology since residency in 1984. I have practiced in the area of Anesthesiology in the State of Texas continuously from 1985 to present. I currently maintain a medical practice in the area of Anesthesiology located in Tyler, Smith County, Texas.

> . . .

> As a board certified physician trained in the medical specialty of Anesthesiology, I have specific knowledge, training and experience in the diagnosis, care and treatment of the conditions involved in Mr. Arnett's claims against Dr. Whisenant. Furthermore, because of my background, training and qualifications as an Anesthesiology practitioner, I have practical knowledge of what is usually and customarily done by other practitioners under circumstances similar to those

created and confronted by Dr. Whisenant on June 15, 2007 when he performed the lumbar discography on Terry Arnett.

...

As a board certified Anesthesiologist physician, I have performed thousands of discography procedures. Included within those discography procedures are lumbar discography of the L2–3, L3–4, L4–5 and L5–S1 levels. These are the exact levels which Dr. Stanley Whisenant performed on Terry Arnett on June 15, 2007, the date on which Mr. Arnett makes his claim against Dr. Whisenant. As a result of my training and experience, I am familiar with the standard of care of a reasonable and prudent physician for pre-operative, operative and post procedural evaluation, diagnosis and treatment of patients like Terry Arnett who undergo lumbar discography of the L2–3, L3–4, L4–5 and L5–S1 levels. As a board certified Anesthesiology physician, I have specific knowledge, training and experience in the diagnosis, care and treatment of the conditions involved in this claim. Furthermore, because of my background, training and qualifications as an Anesthesiologist practitioner[,] I have practical knowledge of what is usually and customarily done by other anesthesiologist practitioners under circumstances similar to those that confronted Dr. Stanley Whisenant during the June 15, 2007 lumber discography performed on Terry Arnett.

Whisenant argues that Calodney's amended report does not demonstrate that he is qualified to render a causation opinion in this case because his causation opinion "relates to a wound infection and post-operative pain" and his amended report "does not state that he treats these types of patients post-operatively, that he diagnoses post-operative wound infections, or that he has experience in doing so." We disagree with Whisenant.

The general rule established by the Texas Supreme Court is that an expert is qualified to opine on causation in a medical malpractice case if the offering party "establish[es] that the expert has knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Broders v. Heise,* 924 S.W.2d 148, 153 (Tex.1996) (internal quotation and citations omitted). Based on that general rule, when a trial court concludes for purposes of chapter 74 that an expert is qualified to opine about the standard of care for a certain operation or procedure, it is also reasonable for a trial court to conclude that the expert is qualified to opine on the causal relationship between that operation or procedure and the complications that can arise from it. For example, in *Livingston v. Montgomery,* 279 S.W.3d 868 (Tex. App.-Dallas 2009, no pet.), the plaintiffs alleged that the defendants were negligent during the labor and delivery of the plaintiffs' son, causing him neurological injuries. Pursuant to chapter 74, the plaintiffs submitted reports prepared by an OB/GYN, Dr. Gerald M. DiLeo. The defendants did not challenge DiLeo's qualifications to opine on the applicable standard of care, but they argued that DiLeo's reports were deficient because he did not demonstrate that he was qualified to opine as to causation of neurological injuries. We disagreed and explained that, for purposes of chapter 74, "DiLeo is an expert in managing labor and delivery, and his expertise qualifies him to opine on the causal relationship between labor and deliver and the complications that stem from labor and delivery, including a newborn's neurological injuries." *Id.* at 877. Likewise, another court concluded that an otolaryngologist's expertise concerning the standard of care for endoscopic sinus surgery "also qualifies him to opine on the cause in fact

of postoperative complications that flow from that surgery." *Sloman–Moll v. Chavez,* No. 04–06–00589–CV, 2007 WL 595134, at *4 (Tex.App.-San Antonio Feb. 28, 2007, pet. denied) (mem.op.).

In this case, Calodney's amended report states that he has "performed thousands of discography procedures." Because Calodney is an expert in discography, the trial court could have reasonably concluded that Calodney was qualified to opine on the cause of injuries that allegedly occurred as a result of Whisenant's alleged negligence during and after that procedure. As a result, we cannot conclude that the trial court abused its discretion when it denied Whisenant's motion to dismiss. We resolve appellant's second issue against him.

CONCLUSION

We resolve Whisenant's issues against him and affirm the trial court's order.