

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00479-CV

Mark **HEALY, M.D.**,
Appellant

v.

Orinda **MOWAT-CUDD**,
Appellee

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-CI-05971
Honorable Laura Salinas, Judge Presiding

Opinion by:　Beth Watkins, Justice

Sitting:　　　Luz Elena D. Chapa, Justice
　　　　　　Beth Watkins, Justice
　　　　　　Liza A. Rodriguez, Justice

Delivered and Filed: February 17, 2021

AFFIRMED

Appellant Mark Healy, M.D. appeals the trial court's order denying his motion to dismiss the underlying health care liability claim filed by appellee Orinda Mowat-Cudd. In this interlocutory appeal, he argues the trial court abused its discretion in failing to dismiss the lawsuit because the claimant's expert report on causation was conclusory and speculative, and the report and curriculum vitae failed to establish the author's qualifications. We affirm the trial court's order.

## BACKGROUND

In 2018, Healy, a radiologist, interpreted a mammogram of Mowat-Cudd. Healy compared the 2018 mammogram to Mowat-Cudd's 2016 mammogram and determined it was not suspicious for malignancy. Another doctor subsequently diagnosed Mowat-Cudd with infiltrating ductal carcinoma of the left breast, a malignant breast cancer.

Mowat-Cudd sued, alleging Healy should have correctly interpreted her 2018 mammogram, compared it to her pre-2016 mammograms, and recognized the tumors. She served him with an expert report supporting her allegations authored by radiologist David Levey, M.D. Healy filed an objection alleging the expert report was inadequate and later filed a motion to dismiss Mowat-Cudd's suit. After the trial court denied his motion to dismiss, Healy appealed.

## ANALYSIS

### *Standard of Review*

We review a trial court's ruling on the sufficiency of an expert's report for an abuse of discretion. *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Van Ness v. EMTC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015).

### *Applicable Law*

Within 120 days of filing suit, a health care liability claimant must timely serve each defendant health care provider with an expert report. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. The report must provide a fair summary of the expert's opinions regarding the applicable standards of care, how the health care provider breached those standards, "and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). The trial court may not dismiss the suit if the report represents a good faith effort to comply with these requirements. *Id.* § 74.351(*l*). A report constitutes a good faith effort if it provides enough detail

to inform the defendant of the specific conduct being questioned and provides a basis for the trial court to conclude the claim has merit. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001). The report need not marshal all the plaintiff's proof to meet this requirement. *Id.* at 878. It may be informal in that the information in the report does not need to meet the same requirements as the evidence offered in a summary judgment proceeding or trial. *Id*. at 879.

### *Application*

In both the trial court and this court, Healy argues the expert report is inadequate because "(a) Dr. Levey's report fails to provide a fair summary of the causal relationship between any alleged failure of Dr. Healy to meet applicable standards of care and the injury, harm, or damages claimed by [Mowat-Cudd]; and (b) Dr. Levey is not qualified to offer expert opinion testimony regarding the causal relationship between Dr. Healy's alleged departure from accepted standards of care and the injury, harm or damages claimed by [Mowat-Cudd]." We address these arguments in reverse order.

### *Qualifications to Render Causation Opinion*

In health care liability claims, the expert report on causation must be provided by a physician who is otherwise qualified under the Texas Rules of Evidence to provide expert opinion testimony on the relationship between the health care provider's alleged departure from the applicable standard of care and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE §§ 74.351(r)(5)(C), 74.403(a). Under the Texas Rules of Evidence, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony if the expert's specialized knowledge will assist the trier of fact. TEX. R. EVID. 702. "In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness: (1)

is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and (2) is actively practicing health care in rendering health care services relevant to the claim." TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(c). "The qualification of a witness as an expert is within the trial court's discretion." *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996). "We do not disturb the trial court's discretion absent clear abuse." *Id*.

In his expert report and curriculum vitae, Levey recites that he is a diagnostic radiologist, board certified by the American Board of Radiology. After graduating from medical school, he completed a radiology residency and then a fellowship in orthopedic radiology and neurospinal imaging. Since completing the fellowship in 1993, Levey has "seen countless mammography studies. . . ." He explains that his clinical practice involves the diagnosis, care, and treatment of patients like Mowat-Cudd, and he works "with primary care physicians on a daily basis in the care of these patients [like Mowat-Cudd]."

Levey's curriculum vitae and expert report reflect that he is an active physician and diagnostic radiologist with substantial training and experience in interpreting mammograms—the health care Mowat-Cudd sought from Healy. *See* TEX. CIV. PRAC. & REM. CODE § 74.402(c). His recital that he diagnoses, cares for, and treats patients like Mowat-Cudd in his clinical practice establishes that he has the knowledge, skill, and experience to provide an expert opinion on causation related to the care and treatment Mowat-Cudd received from Healy. *See* TEX. R. EVID. 702.

Healy complains that Levey does not "mention any postgraduate training in oncology, or any training or expertise in the diagnosis or staging of breast cancer." While "a medical license does not automatically qualify the holder 'to testify as an expert on every medical question,'" the Texas Supreme Court has observed that when medical care crosses several specialties, more than

one type of specialist may be qualified to provide opinion testimony on causation. *Roberts v. Williamson*, 111 S.W.3d 113, 121–22 (Tex. 2003) (recognizing "[a]lthough [the expert report author] is not a neurologist, the record reflects that he had experience and expertise regarding the specific causes and effects of" the claimant's brain injury); *see also Palacios*, 46 S.W.3d at 878–79 (recognizing report may be informal, need only fairly summarize the expert's opinions, and will constitute a good faith effort to comply with the statute if it, inter alia, provides a basis for the trial court to conclude the claim has merit).[1] The trial court did not abuse its discretion in concluding that Levey was qualified to present expert testimony on causation here.

*Causation Opinion*

After setting out his qualifications, Levey describes the "Evolution of [Mowat-Cudd's] Mammograms:"

- "Screening bilateral mammogram on October 24, 2013 was read as benign-BI-RADS 2. This study was compared to 2011, 2010, 2009, and 2008. Scattered benign-appearing calcifications are noted in both breasts. . . . I agree with this interpretation."

- "Screening bilateral mammogram on February 19, 2016 was compared to 2013 and 2011. . . . [The interpreting physician] indicated progressive microcalcifications of the upper outer quadrant of the left breast, and recommended spot magnified views. An impression was documented as incomplete- 'BI-RADS 0.' I agree with this interpretation. . . ."

- "Screening bilateral mammogram was performed on April 6, 2018 and interpreted by Mark Healy M.D., where he reported no abnormalities. The impression was of benign findings- 'BI-RADS 2.' The report indicated he only compared it to the 2016 mammogram- which was an abnormal mammogram. Despite this, there does not appear to be a request for additional workup or follow-up to the obstetrician or the patient. There does not appear to be a recognition of the potential problem or a comparison to the prior mammogram, which had been interpreted as abnormal. . . . In April 2018 there is a focal density with clustered microcalcifications in upper-outer, middle to posterior third of the left breast at ~ 1 o'clock

---

[1] Furthermore, Levey's report demonstrates his familiarity with the standard of care for interpreting mammograms, and Healy has not challenged Levey's qualifications to provide an opinion on that standard of care. When a trial court finds for purposes of Chapter 74 that a physician is qualified to provide his opinion about the standard of care for a certain procedure, "it is reasonable for the trial court to conclude that the physician is qualified to opine on the causal relationship between the failure to meet that standard and the resulting harm." *Legend Oaks-S. San Antonio, LLC v. Molina*, No. 04-14-00289-CV, 2015 WL 693225, at *5 (Tex. App.—San Antonio Feb. 18, 2015, no pet.) (mem. op.) (citing *Hillcrest Baptist Med. Ctr. v. Payne*, No. 10-11-00191-CV, 2011 WL 5830469, at *7 (Tex. App.—Waco Nov. 16, 2011, pet. denied) (mem. op.), and *Whisenant v. Arnett*, 339 S.W.3d 920, 927 (Tex. App.—Dallas 2011, no pet.)).

. . . . but there is no mention either the DENSITY or the CALCS on this report in April 2018."

- "On July 3, 2018 the patient presented with a palpable abnormality in the upper outer quadrant of the left breast. . . . This demonstrated 1) an ill-defined spiculated density with parenchymal distortion as well as 2) multiple pleomorphic microcalcifications. This study was compared to April 2018 and February 2016. . . . Concurrent ultrasound showed multiple mypoechoic irregular masses between the 7:00 and 12:00 position. The impression of the interpretation was BI-RADS 5 which is highly suggestive of malignancy. Patient went on to ultrasound-guided core needle biopsy on July 5, 2018 which demonstrated invasive ductal carcinoma grade 3 with lymphatic invasion. On the basis of reviewing these mammograms, it is my opinion to a reasonable degree of medical probability that Dr. Healy's interpretation and follow-up of the abnormal mammography fell below the applicable standard. This delayed the diagnosis of the disease process and permitted the progression of metastatic disease."

Healy characterizes the last sentence in the expert report as conclusory and speculative, and complains that it fails to link Levey's conclusions to any specific facts of the case. When read in context with the rest of the report, we disagree.

To constitute a good faith effort to comply with the statute and avoid dismissal, Mowat-Cudd was required only to "(1) inform[] the defendant of the specific conduct called into question and (2) provid[e] a basis for the trial court to conclude the claims have merit." *Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018). Here, the expert report explains that Healy should have:

- compared the 2018 mammogram not only to the abnormal 2016 mammogram but also to the earlier, normal mammograms;

- requested additional workup and followed up with Mowat-Cudd or her obstetrician; and

- mentioned the focal density and the microcalcifications in his report.

Levey explains that Healy failed to take these actions, which breached the standard of care. Levey links his opinions to the medical records by including images from each mammogram and pointing out the tumors shown on later mammograms. In this way, the expert report informs Healy of the specific conduct called into question and provides a basis for the trial court to conclude that Mowat-Cudd's claims have merit. *See id.*

In terms of causation, Levey relies on the images and the opinions contained earlier in his report before concluding that Healy's failure to properly interpret Mowat-Cudd's 2018 mammogram and his failure to follow up with Mowat-Cudd or her obstetrician "delayed the diagnosis of the disease process. . . ." Levey then goes a step further and provides his expert opinion that the delayed diagnosis caused by Healy's failure to properly interpret the mammogram and to follow up with Mowat-Cudd or her obstetrician "permitted the progression of metastatic disease." This is a good faith effort to provide a fair summary of Levey's expert opinion on causation. *See, e.g., Palacios*, 46 S.W.3d at 879. Moreover, because Levey's report, read as a whole, "provides a straightforward link between [Healy's] alleged breach of the standard of care and [Mowat-Cudd's] injury," his causation opinion is not speculative. *Abshire*, 563 S.W.3d at 225; *Peabody v. Manchac*, 567 S.W.3d 814, 825 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

Healy complains that Levey's report leaves unanswered "questions about the stage of Ms. Mowat-Cudd's cancer in April 2018, and in particular whether her cancer had already spread to the lymph nodes or was metastatic at that time. . . ." To be sure, Levey does not assert that Healy's deviations from the standard of care caused the breast cancer to begin forming in the first place, only that Healy's failures allowed the tumors to continue growing undetected and untreated. However, quantifying the difference between Mowat-Cudd's condition on the date abnormalities should have been recognized and the date those abnormalities actually were recognized is a damages assessment for the finder of fact, not appropriate for this preliminary stage of the proceedings. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(j) ("Nothing in this section shall be construed to require the serving of an expert report regarding any issue other than an issue relating to liability or causation."). Both the Texas Supreme Court and this court have recently recognized that the expert report is required to establish the causal link between the health care provider's negligence and the claimant's injury, not prove the claimant's damages model. *Coming*

*Attractions Bridal & Formal, Inc. v. Tex. Health Res.*, 595 S.W.3d 659, 666–67 (Tex. 2020); *see also Premieant Inc. v. Snowden*, No. 04-19-00238-CV, 2020 WL 1159055, at \*8 (Tex. App.—San Antonio Mar. 11, 2020, no pet.) (mem. op.) ("The expert report is not required to prove the defendant's liability, only to provide notice of what conduct forms the basis of the plaintiff's claims."). We reject Healy's arguments to the contrary and conclude the trial court did not abuse its discretion in deeming Levey's report adequate regarding causation.

## CONCLUSION

Because we conclude that the trial court did not abuse its discretion in overruling Healy's objections to the expert report and denying his motion to dismiss Mowat-Cudd's lawsuit, we affirm the trial court's order.

Beth Watkins, Justice